IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

99 JAN 29 PM 4: 26

DAVID YAZZIE JONES, Jr.
    Plaintiff,

v.   Civil No. CIV 99 0102 LH

LORENZO F. GARCIA

JULIAN HENRY individually and in his official capacity,
JANICE BEGAYE JONES individually,
THE NAVAJO DEPARTMENT OF PUBLIC SAFETY,
THE NAVAJO NATION, UNITED STATES DEPARTMENT
OF INTERIOR, AND THE BUREAU OF INDIAN AFFAIRS,
    Defendants.

**COMPLAINT FOR MONEY DAMAGES AND DECLARATORY
AND INJUNCTIVE RELIEF FOR PERSONAL INJURY AND
AGGRAVATED ASSAULT, MALICIOUS PROSECUTION,
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,
FAILURE TO SUPERVISE, FAILURE TO PROPERLY TRAIN,
AND NEGLIGENT RETENTION**

I. INTRODUCTION

1.  This is a complaint for personal injuries and compensatory damages, and for declaratory and injunctive relief arising under the laws and Constitution of the United States and the Navajo Nation against Defendants Julian Henry, individually and in his official capacity, Janice Begaye-Jones, individually, Navajo Nation Department of Public Safety, The Navajo Nation, The United States Department of Interior and The Bureau of Indian Affairs. This claim is based upon Defendants Julian Henry and Janice Begaye Jones conspiring to deprive the Plaintiff, David Yazzie Jones, Jr. (hereafter "Mr. Jones") of his civil rights. Defendant Julian Henry a police officer employed by the Navajo Nation Department of Public

Safety drew his police department issued nine (9) millimeter (9mm) weapon and fired it three (3) times at close range at Plaintiff David Yazzie Jones, Jr. (hereafter "Mr. Jones"). Defendant Henry without lawful authority used excessive and deadly force and conspired to cover up his unlawful acts by filing false reports or causing them to be reported and not preventing false reports to be filed to law enforcement agencies knowing that the false reports would be relied upon by them which alleged Plaintiff Jones committed a felony. After law enforcement agencies determined that Plaintiff Jones was a victim Defendants Begaye-Jones and Henry in order to further the conspiracy and to cover up their acts filed consecutive false criminal complaints in the Crownpoint Judicial District Court against Plaintiff. These false criminal complaints were consecutively dismissed after a deferred prosecution and dismissed due to failure to prosecute. The Defendants Henry and Begaye-Jones were either the complainant or witness for the complainant in each of the criminal complaints. The Defendants filed consecutive criminal complaints against Plaintiff to prevent him from filing claims against them or any other party arising from the incident.

The Navajo Nation Department of Public Safety conducted its internal affairs investigation but failed to prosecute Defendant Henry or Defendant Begaye-Jones, failed to prevent Defendant Henry from filing false criminal charges after the Department knew of the true facts of this incident; failed to properly investigate the incident and impose sanctions for violation of Navajo Department of Public Safety policy and procedure; failed to adequately supervise and train Defendant Henry; negligently retained Henry after investigating the incident; and, failed to prevent the violations of Plaintiff's civil rights after the Department knew of the true facts. The Plaintiff was subjected to prosecution under Navajo Law until he was relieved of the charges when they were dismissed by the Crownpoint District Court on

January 30, 1997

## II.  JURISDICTION

2.     This Court has jurisdiction over all matters herein pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674, 28 U.S.C. § 1331, 28 U.S.C. § 1346(b), 28 U.S.C. § 2201 - 2202.

The Navajo Nation has a Public Law 93-638 contract with Bureau of Indian Affairs (BIA) in which the Navajo Nation receives funding from the Federal Government.  The Bureau of Indian Affairs has adopted regulations which require Defendant Julian Henry to be treated as a Federal Employee.

## III.  PARTIES

3.     The Plaintiff David Yazzie Jones, Jr., is and was at all times mentioned herein a member and resident of the Navajo Nation.

4.     Defendant Janice Begaye Jones, is and was at all times mentioned herein a member and resident of the Navajo Nation.  She was also estranged to David Yazzie Jones, Jr. at the time of the incident mentioned herein.

5.     Defendant Julian Henry is and was at all times mentioned herein a Police Officer employed by the Navajo Nation Department of Public Safety who was acting in the course and scope of his employment with the Navajo Nation Department of Public Safety, Crownpoint District.  Upon information and belief, Julian Henry is a member and resident of the Navajo Nation.

6.     Defendant Navajo Department of Public Safety is a tribal government entity of Navajo Nation which receives funds from the United States Government to operate, provide and administer law enforcement services to the People, citizens and territory of the Navajo

Nation pursuant to the provisions of the Indian Self-Determination and Educational Assistance Acts of 1968, 25 U.S.C. § 450 et. Seq..

7. The Defendant Navajo Nation receives federal funds to operate, provide and administer law enforcement services to the People and citizens of the Navajo Nation pursuant to provisions of the Indian Self-Determination and Education Assistance Act of 1968, 25 U.S.C. 450 et seq..

8. The Defendant Department of Interior, Bureau of Indian Affairs (BIA), is an agency of the Executive Branch of the United States Government and provides Public Law 93-638 funding to the Navajo Nation pursuant to a contract to provide among other things, law enforcement to citizens of the Navajo Nation.

IV. STATEMENT OF FACTS

9. On or about the early morning hours of February 21, 1995 Plaintiff Jones persuaded a friend to drive him to his home which was adjacent to State Road 602 in Vanderwagon, New Mexico.

10. Plaintiff Jones' friend reluctantly drove him to his homesite. Plaintiff and his wife, Defendant Janice Begaye-Jones were estranged. She had filed for a divorce in McKinley County, Gallup, New Mexico.

11. Plaintiff and Defendant Begaye-Jones had lived on trust land where they had a homesite and were raising a family of five prior to the divorce action.

12. Defendant Begaye-Jones filed a Petition for and obtained a restraining order against Plaintiff Jones in the Crownpoint Judicial District Court, Crownpoint, New Mexico.

13. Plaintiff was ordered by the restraining order not to approach within 100 feet of the family residence in Vanderwagon, New Mexico.

14. Plaintiff was emotionally upset during the period after Defendant Begaye-Jones filed for divorce and had begun psychological counseling prior to the February 21, 1995 incident.

15. Plaintiff was informed that his wife, Defendant Begaye-Jones, was seeing a man who had been staying at the residence.

16. Defendant Begaye-Jones informed the district court judge that no one other than her children were living as the residence during the pendency of the divorce.

17. Plaintiff took the opportunity to confirm whether Defendant Begaye-Jones' statements were correct when he was informed that a dark colored pick-up truck was seen parked at the residence.

18. Plaintiff's friend drove him to the residence and left him on the road where Plaintiff walked toward his driveway and entered into the property by climbing a locked gate. He intended to check the license plate on the pick-up truck.

19. As Plaintiff walked on the driveway toward his residence he heard the barking of his two dogs in the distance. He continued to approach.

20. The dogs came up to him and Plaintiff played and petted them after they recognized him.

21. Plaintiff was stooped over the dogs when he was suddenly surprised by a male voice which came from behind him asking sternly "what are you doing on my property?"

22. Startled, Plaintiff turned and saw a dark figure a few feet away from him without thinking and acting on emotion Plaintiff hit the dark figure with his closed right hand on the chest.

23. Unknown to Plaintiff, this individual was carrying a nine millimeter (9mm)

handgun. He shot toward Plaintiff but the round missed Plaintiff on the left side of his body.

24.    The concussion and blast startled Plaintiff, he rushed the individual and pushed him backward with Plaintiff's open hands. A second shot was fired toward Plaintiff and he saw the blast near his body.

25.    Plaintiff ran toward his residence followed by the gunman who shot toward Plaintiff but missed.

26    Plaintiff stopped in front of his residence, turned around to allow the gunman to see him, raised his arms above his head and told the gunman to go ahead and shoot Plaintiff so that he may die in front of his children.

27.    The gunman announced his name was "Julian" and he was off duty. He yelled to Defendant Begaye-Jones, who was inside the residence, to call the police.

28.    Plaintiff lowered his arms, pushed the gunman's arm aside which held the handgun and ran toward the road where his friend waited with the pickup running.

29.    Plaintiff returned to the pick-up the same as when he exited, wearing no shirt, jeans, boots, no hat and no jacket.

30.    Plaintiff brought with him no weapon or other object which could be used as a weapon and did not pick up an object to use as a weapon at or near the residence during the confrontation with "Julian."

31.    Plaintiff was driven by his friend toward Gallup, New Mexico where Plaintiff had been staying. As they approached Plaintiff's relative's home they saw numerous police vehicles apparently looking for Plaintiff.

32.    After Plaintiff left the Vanderwagon residence Defendants Begaye-Jones and Julian Henry talked in the living room of the residence and discussed what they should do.

33. Defendant Julian Henry at some time prior to his departure from the residence and the property policed the area for the brass shell casings ejected from his nine millimeter (9mm) handgun which had been issued to him by the Navajo Nation Department of Public Safety.

34. Defendant Henry found two shell casings, but could not find the third shell casing despite his search of the area.

35. After Defendants Henry and Begaye-Jones discussed what Defendant Henry had done they decided to

report the incident to the Mckinley County Sheriff's Department.

36. Defendant Henry left the property of Defendant Begaye-Jones. She then telephoned the McKinley County Sheriff's Department and reported that Plaintiff came to the residence and fired three (3) rounds of a nine millimeter (9mm) handgun at her while she stood on the porch of the residence. No mention of Defendant Henry was made during the reporting of the incident.

37. Defendant Begaye-Jones and Defendant Henry knew that the report to McKinley County Sheriff's Department regarding Plaintiff's use of a deadly weapon would cause the police to search for Plaintiff as a suspect who committed a serious offense.

38. Information provided to the McKinley County Sheriff's Department by Defendant Begaye-Jones resulted in the search for Plaintiff David Jones by the Gallup Police Department and the McKinley County Sheriff's Department.

39. Police vehicles converged at the residence of Plaintiff's sister in the early morning hours of February 21, 1996 searching for Plaintiff who was then considered due to the report by Defendant Begaye-Jones armed with a weapon.

40. Officers from the McKinley county Sheriff's Office arrived at the Jones's Vanderwagon property and residence to investigate the incident.

41. During a search of the area a McKinley County Deputy sheriff along with another officer from the same department and an officer from the Navajo Nation Department of Public Safety, Crownpoint District, found a shell casing identified as a "Speer" nine millimeter (9mm) shell casing. This ammunition had been distributed to Navajo Nation Police Officers for their handguns a few days prior to this incident.

42. A Navajo Department of Public Safety Officer determined that the gunman was not Plaintiff but a police officer of the Navajo Nation.

43. Plaintiff Jones was no longer a suspect for the criminal offense aggravated assault but later was identified as a victim and an unknown Navajo police officer was identified as the suspect.

44. The shell casing was handed over to a Crownpoint District police officer at the beginning of the investigation but was later handed back to the McKinley County sheriff's Department since the offender was a Navajo Police officer.

45. On the morning of February 21, 1996 a report was telephoned to the Crownpoint District office of the Department of Public Safety that an officer had been involved in a shooting.

46. As further information became known Defendant Julian Henry came forward and admitted that he fired shots at Plaintiff.

47. Defendant Henry's use of the handgun was unauthorized, unlawful, excessive and deadly force not justified by the circumstances.

48. To further conceal and cover-up the true facts and to protect Defendant Begaye-

Jones and himself, the Defendants concocted a series of facts to justify Henry's use of unauthorized, unlawful, excessive, deadly force knowing these facts to be false.

49.     To further conceal and cover-up the true facts and to protect Defendant Henry and herself, Defendant Begaye-Jones concocted a series of facts, to justify her claim that Plaintiff had committed multiple criminal offenses against her knowing those facts to be false.

50.     Defendant Begaye-Jones filed four criminal complaints which were dismissed against Plaintiff Jones when the prosecutor for the Crownpoint Judicial District Court moved for an order suspending prosecution of one remaining complaint not dismissed. That complaint for "interfering with a judicial proceeding" was dismissed on December 19, 1996. See Navajo Nation v. David Y. Jones, Jr., No. CP-CR-408-96, Order Deferring Prosecution filed August 21, 1996.

51.     Defendant Julian Henry filed four criminal complaints in the Crownpoint Judicial District Court on February 23, 1996 knowing that factual allegations supporting the complaints were false. He named Defendant Begaye-Jones as his witness to all the complaints.

52.     Defendant Henry's criminal complaints were dismissed against Plaintiff Jones when he filed a Motion to Dismiss all four complaints and an order was entered on January 30, 1997 by the district judge, dismissing the criminal complaints in Navajo Nation v. David Jones, Jr., CP-CR-1670/71/72/73-96.

53.     Defendants Begaye-Jones and Henry filed criminal complaints against Plaintiff in their attempt to cover-up, conceal and justify their actions, all performed in concert to protect each of them and other parties from claims against each of them and other parties which could be brought by Plaintiff.

54.     Plaintiff was exposed to criminal prosecution through the complaints filed

consecutively by Defendants Begaye-Jones and Henry acting in concert to prevent him from pursuing claims against them or other parties.

55. The Navajo Nation of Public Safety conducted an internal affairs investigation concerning this incident.

56. Officer Henry was placed on administrative leave for a period of time after the incident, transferred to the administrative office of the Crownpoint District and later returned to active duty.

57. The Navajo Nation Department of Public Safety:

a. knew that Officer Henry did not disclose that he fired his weapon in violation of police policies;

b. knew that Officer Henry was involved in a cover-up and concealed information until it was apparent that he shot at Plaintiff three (3) times with his police issued weapon;

c. knew that Officer Henry had left a crime scene and failed to report the incident in violation of police policies;

d. failed to have Officer Henry's shooting at Plaintiff properly investigated to determine whether Henry committed a criminal offense;

e. failed to investigate whether Officer Henry was involved in a cover-up to conceal the facts of the incident in concert with Defendant Begaye-Jones;

f. failed to prevent both Defendant Begaye-Jones and Defendant Henry from filing false criminal charges against Plaintiff knowing that the allegations supporting the criminal charges were false;

g. failed to adequately train and properly supervise Defendant Henry in his use of deadly force, which force was unauthorized, unlawful, excessive and unjustified under the circumstances;

h. failed to adequately train and properly supervise Defendant Henry when he failed to report firing his weapon;

i. failed to adequately train and to properly supervise Defendant Henry when he left a crime scene and failed to report incident; and

j. failed to properly supervise and train Defendant Henry regarding:

   i. the lawful reporting of criminal offenses and incidents;

   ii. the lawful filing of criminal complaints supported by evidence based upon probable cause; and

   iii. the lawful use of deadly force and reporting of such use of deadly force.

58. The acts or failures or omissions to act of Defendants Begaye-Jones, Henry and the Navajo Nation of Public Safety continued until Plaintiff was relieved of criminal prosecution on January 30, 1997.

### COUNT I
### MALICIOUS PROSECUTION
### (FOUR COUNTS)
### (DEFENDANT HENRY)

59. Plaintiff realleges paragraphs 1- 58 as and incorporates them as if fully set forth herein.

60. The Defendant Julian Henry at all times material to this complaint was a law enforcement officer employed by the Defendants Navajo Nation Department of Public Safety

and the Navajo Nation.

61.     Defendant Henry filed four criminal complaints against Plaintiff in the Crownpoint Judicial District Court knowing the factual allegations to be false and without probable cause.

62.     Defendant Henry filed such complaints to conceal, cover-up and justify his unauthorized, unlawful, excessive use of deadly to prevent Plaintiff from asserting claims against Defendant Henry and the Defendants Navajo Nation Department of Public Safety and the Navajo Nation.

63.     Defendant Henry's acts were performed with malice with the intent to cause Plaintiff severe emotional distress.

64.     Defendant Henry caused all criminal complaints against Plaintiff to be dismissed upon his own motion.

65.     Plaintiff as a direct and proximate cause of Defendant's acts suffered severe emotional distress, humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages.

COUNT II
MALICIOUS PROSECUTION
(FOUR COUNTS)
(DEFENDANT BEGAYE-JONES)

66.     Plaintiff realleges paragraphs 1 - 65 and incorporates them as if fully set forth herein.

67.     Defendant Begaye-Jones conspired and in concert with Defendant Henry caused the filing of four (4) criminal complaints to be filed against Plaintiff in the Crownpoint Judicial District Court knowing that the factual allegations to be false and without probable cause.

68. Defendant Begaye-Jones acting in concert with Defendant Henry concealed, and created a cover-up in order to justify Defendant Henry's unauthorized, unlawful, excessive use of deadly force to prevent Plaintiff from asserting claims against Defendants Henry and Begaye-Jones and any other party.

69. Defendant Begaye-Jones' acts were performed with malice with intent to cause Plaintiff severe emotional distress.

70. The prosecutor caused all criminal complaints by Begaye-Jones against Plaintiff to be dismissed.

71. Plaintiff as a direct and proximate cause of Defendant Begaye-Jones's acts suffered severe emotional distress, humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (DEFENDANT HENRY)

72. Plaintiff realleges paragraphs 1 - 71 and incorporates them as if fully set forth herein.

73. Defendant Henry's acts: were without lawful authority; used excessive and deadly force without lawful justification; were without probable cause; and, amounted to extreme and outrageous conduct.

74. Defendant's Henry's acts were performed with intent to cause Plaintiff severe emotional distress.

75. Plaintiff as a direct and proximate cause of Defendant Henry's acts suffered severe emotional distress, partial loss of hearing in his left ear due to the concussion blast of

the bullet, humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages.

## COUNT IV
### AGGRAVATED ASSAULT - THREE COUNTS
### (HENRY, NAVAJO DEPARTMENT OF PUBLIC SAFETY AND NAVAJO NATION)

76. Plaintiff realleges paragraphs 1 - 75 and incorporates them as if fully set forth herein.

77. Defendant Henry shot at Plaintiff three (3) times which acts were without lawful authority, used excessive and deadly force without lawful justification and were without probable cause.

78. Defendant Henry intended to cause a harmful or offensive contact or to cause an apprehension of a harmful or offensive contact.

79. Defendant Henry caused Plaintiff an apprehension of a harmful or offensive contact to his person.

80. Defendant Henry's acts while performed in the scope of his employment of shooting at Plaintiff three (3) times were the proximate cause of Plaintiff's apprehension.

81. Plaintiff as a direct and proximate cause of Defendant Henry's acts suffered severe emotional distress, partial loss of hearing in his left ear due to the concussion blast of the bullet, humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages.

## COUNT V
### FAILURE TO ADEQUATELY TRAIN AND SUPERVISE
### (NAVAJO DEPARTMENT OF PUBLIC SAFETY AND NAVAJO NATION)

82. Plaintiff realleges paragraphs 1 - 81 and incorporates them as if fully set forth

herein.

83. Defendant Navajo Department of Public Safety and the Navajo Nation failed to supervise and train Defendant Henry as alleged in paragraph 56 of this complaint.

84. The Defendants Navajo Department of Public Safety and the Navajo Nation breached their duty to adequately train and supervise Defendant Henry when they failed to follow their own rules, policies and procedures regarding Defendant's Henry's acts and omissions.

85. The Defendants Navajo Department of Public Safety and the Navajo Nation failure and neglect to adequately train and supervise Defendant Henry was the proximate cause of injuries to Plaintiff.

86. As a result of Defendants Navajo Department of Public Safety and the Navajo Nation's breached of duty to adequately train and supervise Defendant Henry, Plaintiff suffered severe emotional distress, partial loss of hearing in his left ear due to the concussion blast of the bullet, humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages.

## COUNT VI
## NEGLIGENT RETENTION
### (NAVAJO DEPARTMENT OF PUBLIC SAFETY AND NAVAJO NATION)

87. Plaintiff realleges paragraphs 1 - 86 and incorporates them as if fully set forth herein.

88. The Defendants Navajo Department of Public Safety and the Navajo Nation conducted an internal affairs investigation regarding Defendant Henry's use of his weapon against Plaintiff, the facts leading up to the shooting incident and the facts after the incident

was reported.

89. Defendants Department of Public Safety and the Navajo Nation had a duty to fully investigate the incident, in order to protect the interest of the Department of Public Safety and the interests of the Navajo Nation and its citizens including Plaintiff.

90. Defendants Department of Public Safety and the Navajo Nation breached their duty to Plaintiff when they negligently retained Defendant Henry allowing him to maintain and prosecute four criminal complaints against Plaintiff knowing that facts alleged to support the claims were false; allowing him to testify as a complaining witness in Defendant Begaye-Jones four criminal complaints against Plaintiff knowing that the facts alleged to support these complaints were false; allowing him to retain his position and employment when the Defendants knew that he acted in concert with Defendant Begaye-Jones when he either did not prevent her from filing false criminal reports or by his omission to act to disclose the true facts of the incident, until confronted with the truth, thereby concealing the truth; allowing him to retain his position and employment knowing he violated numerous policies through his non disclosure of the use of deadly force and the firing of his weapon; and, his failure to disclose and report the incident involving the shooting at Plaintiff Jones.

91. Defendants negligently retained Defendant Henry when they breached the duty to properly investigate the entire incident of Defendant Henry's shooting at Plaintiff.

92. As a result of Defendants Navajo Department of Public Safety and the Navajo Nation's breached of duty to protect the interests of Plaintiff, Plaintiff's civil rights were violated and he was subjected to criminal investigation, four criminal complaints filed by Defendant Begaye-Jones, four criminal complaints filed by Defendant Henry which caused Plaintiff to suffer severe emotional distress, partial loss of hearing in his left ear due to the

concussion blast of the bullet, humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages.

### **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff David Y. Jones, Jr. prays for Judgment against Defendants Julian Henry, Janice Begaye-Jones, The Navajo Nation Department of Public Safety and Navajo Nation:

1. For compensatory damages for malicious prosecution to include past and future medical expenses, for severe emotional distress, loss of partial hearing in left ear, and humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages against Defendants Julian Henry, Janice Begaye-Jones, The Navajo Nation Department of Public Safety and Navajo Nation in an amount to be determined at trial;

2. For compensatory damages for intentional infliction of emotional distress to include past and future medical expenses, for severe emotional distress, loss of partial hearing in left ear, and humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages against Defendants Julian Henry, Janice Begaye-Jones, The Navajo Nation Department of Public Safety and Navajo Nation in an amount to be determined at trial;

3. For compensatory damages for aggravated assault to include past and future medical expenses, for severe emotional distress, loss of partial hearing in left ear, and humiliation, embarrassment, loss of reputation, loss of income and other and further injuries and damages against Defendants Julian Henry, The

Navajo Nation Department of Public Safety and Navajo Nation in an amount to be determined at trial;

4. For punitive damages against Defendant Janice Begaye-Jones in an amount to be determined at trial;

5. For declaratory and injunctive relief against Defendants requesting declaration that the Defendants Julian Henry, The Navajo Nation Department of Public Safety and Navajo Nation violating the civil rights of Plaintiff and enjoining them from violation of Plaintiff's civil rights under the Laws of the United States of America; and

6. For Plaintiffs' attorney fees and taxable costs expended herein;

7. For such other relief this Court deems just and proper.

RESPECTFULLY SUBMITTED,

ANTHONY F. LITTLE AND ASSOCIATES

BY: *[signature]*
Anthony F. Little
Attorney for Plaintiffs
1909 Wyoming Blvd., N.E.
Albuquerque, New Mexico 87112
(505) 323-0123     {Fax 323-0100}